UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>    Plaintiff, )<br>)<br>vs. )<br>)<br>GENERAL ELECTRIC COMPANY, )<br>)<br>    Defendant. )<br>) | Civil Action No.  1:06-cv-354-PB |

COMPLAINT

The United States of America, by and through its undersigned attorneys, by the authority of the Attorney General of the United States, and on behalf of the United States Environmental Protection Agency ("EPA"), alleges:

PRELIMINARY STATEMENT

1.      This is a civil action brought pursuant to Sections 107(a) and 113(g)(2) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9607(a) and 9613(g)(2).  The United States seeks the recovery, pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), of costs that have been incurred by the United States in response to the release and/or threatened release of hazardous substances at and from the Fletcher's Paint Works and Storage Facility Site (the "Site") in Milford, New Hampshire.  The United States further seeks a declaration, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), that is binding as to liability in any subsequent action for response costs that may be incurred by the United States in connection with the Site.

JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action pursuant to Sections 107 and 113(b) of CERCLA, 42 U.S.C. §§ 9607 and 9613(b), and 28 U.S.C. §§ 1331 and 1345.

3.      Venue is proper in this District pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b), because the release or threatened release of hazardous substances that gave rise to this claim occurred in this District.

## DEFENDANT

4.      General Electric Company ("General Electric") is a corporation established under the laws of the State of New York, with headquarters in Fairfield, Connecticut, and places of business in additional locations.

## THE SITE

5.      The Site is a former paint manufacturing and retail paint sales facility consisting of three non-contiguous parcels in Milford, New Hampshire. The parcels were consolidated into one Site due to their proximity, common operation, the nature of wastes present, and the similarity of the conditions in each area.

6.      Windsor-Embassy Corporation owned and operated the portions of the Site where it did business as Milford Paint Works and/or as Fletcher's Paint Works (collectively "Fletcher's").

7.      The "Elm Street" or "Paint Works" portion of the Site contained the building housing the manufacturing and retail sales operations of Fletcher's. This portion of the Site consists of a 1.6-acre plot bounded on the north-northeast by the Souhegan River, on the east by a cemetery, on the South by Elm Street, and on the west by Keyes Drive and a municipal recreation area.

8.      The "Mill Street" or "Storage Facility" portion of the Site included a building used for storing miscellaneous materials owned by Fletcher's. This portion of the Site consists of an approximately 100 foot by 125 foot lot located approximately 700 feet to the south of the Elm Street portion of the Site. The lot is bounded on the north by the Boston and Maine Railroad right-of-way, on the east by Cottage Street, on the south by Mill Street, and on the west by the Draper Energy property.

9.      The "Drainage Ditch" portion of the Site is part of a ditch and culvert system carrying seasonal discharge to the Souhegan River from an approximately 11-acre pond and adjoining wetland system located across from Mill Street and south of the Storage Facility.

10.     At all relevant times, General Electric manufactured capacitors at its plant locations in Pittsfield, Massachusetts, Hudson Falls, New York and/or Fort Edward, New York. During the relevant time period, General Electric arranged for disposal or treatment at the Site of hazardous substances from its capacitor manufacturing operations.

11.     In 1985, EPA conducted a Preliminary Assessment and Site Investigation on facilities near the Keyes Municipal Supply Well, located in Milford, New Hampshire, to determine which facility might be responsible for that well's contamination with volatile organic compounds ("VOCs"). The Paint Works and Storage Facility areas were determined to be the most probable sources of contamination.

12.     EPA's inspection of the Paint Works on December 10, 1987, revealed approximately 800 drums containing hazardous substances. Many of these drums were leaking, bulging, rusted, or dented. In addition, the inspection revealed stained soil indicative of past spills or leaks of hazardous substances in unknown amounts.

13.     EPA's further investigation revealed that soils on all portions of the Site were contaminated by numerous hazardous substances, as defined in Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), including but not limited to polychlorinated biphenyls ("PCBs") and VOCs.

14.     On March 31, 1989, the Site was placed on the National Priorities List, a list of hazardous waste sites deemed by EPA to pose the greatest threat to health, welfare and the environment. The National Priorities List is established pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, and codified at 40 C.F.R. Part 300, Appendix B.

RESPONSE ACTIONS BY THE UNITED STATES

15.     EPA determined that certain response actions were necessary to respond to the release or threatened release of hazardous substances from the Site and the resulting harm or threat of harm to the public health or welfare or the environment.

16.     EPA undertook removal action activities, pursuant to Section 104 of CERCLA, 42 U.S.C. § 9604, to respond to the release or threatened release of hazardous substances from the Site. The removal action activities included without limitation: characterizing, removing, and disposing of certain hazardous substances; installing (and repairing) a temporary cover or cap on soils located at both the Elm Street and Mill Street portions of the Site; installing a fence

at the Elm Street portion of the Site; demolishing and disposing of the Mill Street building; and completing a remedial investigation and feasibility study ("RI/FS") for portions of the Site.

17.     Pursuant to a July 13, 1995 Unilateral Administrative Order, General Electric removed PCB-contaminated soils from three residential properties adjacent to the Mill Street portion of the Site and re-paved a portion of Mill Street to direct surface water runoff toward the Site property and away from adjacent residences.  EPA temporarily relocated residents who would be affected by General Electric's removal work.

18.     On September 30, 1998, EPA issued a Record of Decision ("ROD") for the first operable unit ("OU-1") at the Site.  The OU-1 remedy includes, without limitation, the demolition and disposal of the former Fletcher's building on Elm Street, excavation and on-site treatment of contaminated soils via ex-situ thermal desorption, the backfilling of treated soils into excavated areas at the Site, the placement of a soil and asphalt cover over residual low-level threat wastes, and monitored natural attenuation of the contaminated groundwater.

19.     On July 16, 2001, EPA issued a Unilateral Administrative Order ("UAO") (CERCLA docket No. 01-2001-0063) to General Electric.  The UAO requires General Electric to perform the remedial design and remedial action for OU-1 as specified in the ROD, and the explanation of significant differences for the ROD, for OU-1.  EPA has incurred and will incur response costs through oversight of General Electric's response actions at the Site.

20.     EPA's activities in response to the release or threat of release of hazardous substances at the Site, including all enforcement activities related thereto, constitute response actions, as defined in Section 101(25) of CERCLA, 42 U.S.C. § 9601(25).

21.     In 1991, the United States filed an initial action against General Electric seeking recovery of response costs and a declaratory judgment that General Electric is liable for all future response costs at the Site.

22.     In 1994, the judicial action described in Paragraph 21 of this Complaint was resolved through entry of a Consent Decree on June 16, 1994 (the "1994 Consent Decree").

CLAIM FOR RELIEF

23.     Paragraphs 1 through 22 of this Complaint are realleged and incorporated by reference.

24. The Fletcher's Paint Works and Storage Facility Site, including the Paint Works, the Storage Facility, and the Drainage Ditch, is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

25. Threatened and actual "releases" of "hazardous substances" within the meaning of Sections 101(14) and (22), and 107(a) of CERCLA, 42 U.S.C. §§ 9601(14) and (22) and 9607(a), have occurred and continue to occur into the environment and at the Site.

26. At times relevant to this action, hazardous substances were disposed of at the Site, as the term "disposal" is defined in Section 101(29) of CERCLA, 42 U.S.C. §§ 9601(29).

27. Defendant General Electric is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

28. Defendant General Electric is a person "who, by contract, agreement, or otherwise, arranged for disposal or treatment, ... of hazardous substances," as defined in Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3), which were disposed of at the Site.

29. The United States has incurred "response costs," as defined in Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), for actions taken in response to the release or threat of release at the Site. The United States has incurred at least $9,195,021.28 in unreimbursed response costs at the Site.

30. These costs incurred by the United States in connection with the Site were not inconsistent with the National Oil and Hazardous Substance Pollution Contingency Plan ("NCP"), 40 C.F.R. Part 300.

31. General Electric is liable for all unreimbursed response costs incurred by the United States regarding the removal action at the Site and the OU-1 remedy.

32. The releases and threatened releases of hazardous substances at or from the Site have caused and will cause the United States to incur response costs in connection with the Site in addition to those incurred to date. Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), in any action for recovery of response costs, this Court shall enter a declaratory judgment on liability for response costs that will be binding on any subsequent action or actions to recover further response costs.

REQUEST FOR RELIEF

THEREFORE, the plaintiff, United States of America, requests that this Court:

1. Enter judgment in favor of the United States, pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), holding defendant liable for all unreimbursed costs incurred by the United States regarding the removal action at the Site and the OU-1 remedy, plus interest accrued thereon;

2. Enter a declaratory judgment regarding defendant's liability for response costs that will be binding on any subsequent action or actions to recover further response costs regarding the Site;

3. Award the United States its costs and disbursements in this action; and

4. Grant such other and further relief as the Court deems appropriate.

Respectfully submitted,

\_\_\_\_//s   Sue Ellen Wooldridge_____
Sue Ellen Wooldridge
Assistant Attorney General
Environment and Natural Resources
  Division
United States Department of Justice
Washington, D.C.  20530


\_\_\_\_\_//s    C. A. Fiske_____
Catherine Adams Fiske
Trial Attorney
Environmental Enforcement Section
United States Department of Justice
Boston Field Office
One Gateway Center, Suite 616
Newton, MA 02458
(617) 450-0444

Thomas P. Colantuono
United States Attorney
District of New Hampshire


Gretchen Leah Witt
Chief, Civil Division
Office of the United States Attorney
P.O. Box 480
Concord, NH 03302-0480


OF COUNSEL:

RuthAnn Sherman
United States Environmental Protection Agency
Region 1
One Congress Street, Suite 1100 (SES)
Boston, MA  02114