IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| United States of America, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 06-CV-00354-PB |
| vs. ) | |
| ) | Judge Paul J. Barbadoro |
| General Electric Company, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM IN SUPPORT OF
UNITED STATES' MOTION IN LIMINE TO LIMIT THE PROPOSED TESTIMONY
OF GENERAL ELECTRIC COMPANY'S EXPERT WITNESS JAMES GIRARD**

Plaintiff, the United States of America (the "United States") submits this memorandum in support of its Motion to Limit the Proposed Testimony of General Electric Company's Expert Witness James Girard. The relief sought in this motion will conform with a previous decision issued by this Court, and will conserve judicial resources by precluding irrelevant expert testimony at trial on a factual issue that is unestablished by admissible evidence.

BACKGROUND

The United States commenced the current action on September 20, 2006, by filing a Complaint alleging that defendant General Electric Company ("GE") arranged for the disposal or treatment of hazardous substances found at the Fletcher's Paint Works and Storage Superfund Site (the "Site") in Milford, New Hampshire, and is therefore liable for all unrecovered past and future costs associated with clean-up. See Complaint, Docket No. 1. GE contested its liability and the parties filed cross-motions for summary judgment, which this Court denied after hearing oral arguments on April 16, 2008. During the summary judgment phase of this case, the United

States filed a motion to strike certain inadmissible testimony relied upon by GE in its summary judgment briefing. See Doc. No. 37. Among the inadmissible evidence that the United States moved to strike was the sole piece of evidence upon which GE relied in its assertion that the Webster Cement Company ("Webster"), which had obtained some of GE's scrap Pyranol from Fletcher's Paint Works ("Fletcher's"), was using scrap Pyranol as an ingredient in the manufacture of asphalt roof coating. See Memorandum in Support of Motion to Strike, Doc. No. 37-2 at 3-4. This Court agreed that GE's evidence in support of this assertion is hearsay and is not "otherwise admissible under the rules of evidence." See Doc. No. 51. Other than the evidence that this Court has agreed is inadmissible, GE cited no direct evidence in support of its claim that Webster used scrap Pyranol to manufacture roof coating. Nevertheless, GE has indicated its intent to rely upon the testimony of purported expert witness James Girard at the upcoming trial in November for the purpose of opining whether PCBs and/or scrap Pyranol could have been used as a plasticizer and non-drying oil in asphalt roof coating.[1]

### ARGUMENT

Federal Rule of Evidence 702 governs the standard for acceptable expert testimony. The party relying upon an expert witness in court bears the burden of proof in showing that its expert

---

[1] GE indicated its intent to rely upon the testimony of James Girard in its July 3, 2008 disclosure pursuant to the Case Management Order. See Doc. No. 54 (approved 5/5/08). The United States subsequently arranged a conference call with GE's attorney, William "Mo" Cowan. During this July 8 call, the United States proposed that if GE would agree to limit Girard's testimony to the use of PCBs in paint, and forego Girard's proposed testimony regarding the use of PCBs in roof coating, the United States would agree to forgo calling its rebuttal expert witness Donald Portfolio. The United States mentioned its Motion to Strike, Doc. No. 37, and the Court's decision, Doc. No. 51, as the basis for its proposal. GE rejected this proposal.

will assist the trier of fact by sharing scientific, technical or other specialized knowledge. See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999); Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592 (1993). Trial judges act as gatekeepers by ensuring that the following requirements are met before an expert may testify: (1) the expert is qualified to testify as an expert in a certain field; (2) the testimony is based on specialized knowledge; and (3) the testimony is such that it will assist the trier of fact in comprehending and determining a fact in issue. Correa v. Cruisers, a Div. of KCS Int'l, Inc., 298 F.3d 13, 24 (1st Cir. 2002). Specifically, the information provided by an expert must be reliable and *relevant to the facts of the case*. See Ed Peters Jewelry Co. v. J. Jewelry Co., 124 F.3d 252, 259 (1st Cir. 1997) (emphasis added). Because gauging the utility of an expert witness is a case-specific inquiry, trial judges have substantial discretion to exclude such opinion evidence. See United States v. Sepulveda et al., 15 F.3d 1161, 1183 (1st Cir. 1993).

The United States concedes that Fletcher's gave or sold some scrap Pyranol to the Webster Cement Company. However, at the summary judgment stage of this case, GE failed to identify any admissible evidence in the record to establish its assertion that Webster Cement Company used scrap Pyranol as an ingredient in roof coating. See Doc. Nos. 37, 37-2 (Motion to Strike), 41 (Opposition), 45 (Reply), 51 (Order). Since the parties filed for summary judgment, there has been no new development of evidence on this question, including during the recent discovery permitted under the Case Management Order. See Doc. No. 54 (approved 5/5/08). Accordingly, GE will not be able to demonstrate at trial what purpose Webster may have had for the scrap Pyranol it obtained from Fletcher's. See Doc. No. 45 at 5-6. As a result,

any expert testimony regarding its application in asphalt roof coating is both irrelevant and unhelpful.[2]  Nevertheless, GE has expressed its intent to offer Girard's testimony for both the topic of scrap Pyranol's utility as an additive to paint, and as an additive to asphalt roof coating.

As the relief requested in the United States' Motion to Strike indicated, if the Court were to strike the inadmissible hearsay evidence relied upon by GE in support of its claim that Webster used scrap Pyranol in roof coating, it should then disregard that unsupported claim.  See Doc. Nos. 37 at 1-2; 37-2 at 6-7.  A logical consequence of disregarding the unsupported claim that Webster used scrap Pyranol as an ingredient in roof coating is that there is no need for either party to present expert testimony about whether PCBs and/or scrap Pyranol could be used as an ingredient in roof coating, whether it was common practice to do so, and whether PCBs and/or scrap Pyranol would have imparted any benefit to the end product.  Because any such expert testimony would not be relevant to understanding an established fact of the case, the United States respectfully requests that Girard's proposed expert testimony be limited to the topic of the use of PCBs and/or scrap pyranol as an ingredient in paint.  See Federal Refinance Co., Inc. v. Klock, 352 F.3d 16, 24-26 (1st Cir. 2003) (affirming court's decision to grant motion in limine to exclude expert testimony on an irrelevant topic).

Should Girard be precluded from offering his opinion testimony regarding the use of

---

[2] Such expert testimony is also unhelpful because the question of what Webster did with scrap Pyranol is not relevant to the inquiry for trial, as articulated by the Court at the April 16, 2008 oral argument.  There is no admissible evidence of which the United States is aware demonstrating that, during the relevant time period, GE was aware of the existence of Webster, Webster's interactions with Fletcher's, and certainly not whether Webster used GE's scrap Pyranol in its roof coatings.

PCBs and/or scrap pyranol in asphalt roof coating, the United States acknowledges that there would be no need for it to call its proposed rebuttal expert witness Donald Portfolio at trial.

CONCLUSION

For the reasons stated above, this Court should limit the testimony of GE's proposed expert witness James Girard to preclude him from offering testimony regarding the use of PCBs and/or scrap Pyranol as an ingredient in asphalt roof coating.

Respectfully submitted,

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice
Washington, D.C.  20530

Dated: 08/03/2008
`

 */s/* Laura J. Rowley
Laura J. Rowley, Trial Attorney
Peter M. Flynn, Senior Attorney
Environmental Enforcement Section
United States Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
(202) 616-8763

Catherine Adams Fiske, Trial Attorney
Environmental Enforcement Section
United States Department of Justice
One Gateway Center, Suite 616
Newton, MA 02458

THOMAS P. COLANTUONO
United States Attorney
District of New Hampshire

                                                Gretchen Leah Witt
                                                Chief, Civil Division
                                                Office of the United States Attorney
                                                53 Pleasant Street, Fourth Floor
                                                Concord, NH  03301-3904

OF COUNSEL:

RuthAnn Sherman
United States Environmental Protection Agency, Region 1
One Congress Street, Suite 1100 (SES)
Boston, MA  02114