UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 06-CV-00354-PB |
| GENERAL ELECTRIC COMPANY, | Judge Paul J. Barbadoro |
| Defendant. | |

**DEFENDANT GENERAL ELECTRIC COMPANY'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO LIMIT
THE EXPERT TESTIMONY OF DR. JAMES GIRARD**

The Government does not challenge Dr. Girard's qualifications to testify as an expert witness. It does not claim any factual or methodological defects in his report. The motion in limine depends, rather, on the argument that a portion of Dr. Girard's testimony will not be *relevant* because GE has supposedly failed to "establish" the fact in issue to which the testimony relates. This Court should deny the motion in limine because its essential premise is demonstrably incorrect.

**1.      Dr. Girard's Testimony Is Relevant Because The Record Contains Evidence (Which The Government Ignores) To Support The Reasonable Inference That Webster Cement Used Pyranol To Manufacture Roof Coatings.**

The Rules of Evidence allow expert testimony that will assist the trier of fact to determine a "fact in issue." Fed. R. Evid. 702. The fact in issue to which Dr. Girard's testimony relates is the usefulness of the Pyranol that GE sold to Fletcher Paint, and that Fletcher in turn sold to Webster Cement (also known as Webtex). Usefulness is one element of the two-part test for distinguishing the sale of a useful product from an arrangement for the disposal of waste. See, e.g., In re Solutia, Inc., 2001 WL 1549338 (E.A.B. 2001) (focusing on "reason for the transaction" and the "nature of the material

1

exchanged"); *see also* Memorandum in Support of the United States' Motion for Partial Summary Judgment as to Liability (Doc. No. 33-2), p. 17 (articulating the same inquiry). Dr. Girard will give his expert opinion as a chemist that the Pyranol purchased from GE, and sold to Webster, by Fletcher was useful as an ingredient in the manufacture of roof coating products. The Government's own expert on roof coatings, Mr. Portfolio, *agrees* with Dr. Girard. Revised Expert Report of Donald C. Portfolio ("Revised Portfolio Report", GE Reply, Ex. G, Doc. No. 48-9), dated September 25, 2007, p.4.  It is clear enough, therefore, why the Government now wants to exclude Dr. Girard's testimony. *See* Memorandum in Support of Motion In Limine (Doc. No. 57-2) at 5 (offering to withdraw Mr. Portfolio if the Court strikes Dr. Girard's testimony).

The Government's argument, however, is insufficient to the task. The Government claims that the usefulness of Pyranol as an ingredient in roof coatings is not a legitimate "fact in issue," within the meaning of Rule 702, because, "at the summary judgment stage of this case, GE failed to . . . establish its assertion that Webster Cement Company used scrap Pyranol as an ingredient in roof coating." Memorandum in Support of Motion In Limine (Doc. No. 57-2) at 3.

It should be noted that the Government has completely ignored the applicable legal standards for "establishing" (or failing to establish) the facts assumed by an expert. The lapse is unsurprising, because the bar is not high. "Counsel in framing hypothetical questions to be put to expert witnesses, are not confined to facts admitted or absolutely proved, but facts may be assumed which there is *any evidence on either side tending to establish*, and which are pertinent to the theories which they are attempting to uphold." Massachusetts Mutual Life Insurance Co. v. Brei, 311 F.2d 463, 471 (2d Cir. 1962),

2

quoting <u>Dilleber v. Home Life Insurance Co.</u>, 87 N.Y. 79, 81 (1882) (emphasis added). Thus, while an expert's opinion should assume only those facts "supported" by the evidence, <u>Toucet v. Maritime Overseas Corp.</u>, 991 F.2d 5, 10 (1st Cir. 1993), sufficient evidentiary support exists where the assumed facts "can reasonably be deduced from the evidence." <u>Travelers Insurance Co. v. Drake</u>, 89 F.2d 47, 50 (9th Cir. 1937). Once the proponent has crossed that low threshold, the Rules of Evidence "place the 'full burden of exploration of the facts and assumptions underlying the testimony of an expert witness squarely on the shoulders of opposing counsel's cross-examination," <u>Toucet</u>, 991 F.2d at 10, quoting <u>Smith v. Ford Motor Co.</u>, 626 F.2d 764, 793 (10th Cir. 1980), and the truth of facts assumed by the expert becomes "a question of fact for the determination of the jury." <u>Travelers Insurance Co.</u>, 89 F.2d at 50.

The Government's motion, therefore, rests on its contention that GE "failed to identify *any* admissible evidence," Memorandum in Support of Motion In Limine (Doc. No. 57-2) at 3 (emphasis added), to support the inference that Webster Cement used the Pyranol it bought from Fletcher Paint to manufacture roof coating products. It is difficult to understand how the Government could even make this assertion. At the summary judgment stage, in both its opposition memorandum (Doc. No. 39) and its opposition to a motion to strike (Doc. No. 41), GE identified a wealth of admissible evidence (including admissions by the Government) to support a finding that Webster purchased Pyranol for use in its products. *See infra at 4-5.*

As GE pointed out in these summary judgment briefings, there may no longer be any *direct* evidence about Webster's use of Pyranol. This is because, by the time the United States inspected the Fletcher site and then prosecuted this lawsuit, the transactions

at issue were decades old, Webster was no longer in business, its employees had scattered and become unavailable, and its records had been lost. But nothing in CERCLA requires only proof by direct evidence. The use of circumstantial evidence is "not unusual in CERCLA cases, like this one, where the [transactions at issue] occurred many years ago, detailed records are unavailable, memories have dimmed, and witnesses having first-hand knowledge may either be difficult to locate or are reluctant to testify." United States v. Davis, 20 F. Supp. 2d 326, 336 (D. R.I. 1998).  See also Gathers v. South Carolina Electric & Gas Co., 427 S.E.2d 687, 688 (S.C.App. 1993) ("counsel may rely upon circumstantial evidence to prove an essential fact in framing a hypothetical question" for an expert witness).

The circumstantial evidence, first identified by GE at the summary judgment stage, is ample. The following facts, all supported by admissible evidence, most of which are conceded or unopposed by the Government, support the inference that Webster used the Pyranol it bought from Fletcher to manufacture roof coating products:

(1) Webster bought Pyranol from Fletcher, *see* EPA's De Minimis Determination, ¶ 14 (GE SJ Memo, Ex. M, Doc. No. 36-16) (Fletcher "began *selling* pyranol to Webster Cement in 1956"); Declaration of Wallace Hooper, dated August 29, 1991 ("Hooper Decl."), at p. 1 (USA SJ Memo, Ex. 26, Doc. No. 34-1); Deposition of Wallace Hooper, dated April 29, 1992 ("Hooper Dep. I") 93:7-93:19, 174:19-174:22, 239:5-239:12, 244:4-244:12, 272:22-273:1, 276:2-276:23 (GE Reply, Ex. D, Doc. No. 48-6); Declaration of Richard Whitney, dated January 25, 2007 ("Whitney Decl.") at ¶ 8 (GE SJ Memo, Ex. U, Doc. No. 36-24); Deposition of Richard Whitney, dated January 16, 2001 ("Whitney Dep. I") 54:14-55:1, 185:6-185:21 (USA SJ Memo, Ex. 72, Doc. No. 35-22), Deposition of Richard Whitney, dated April 20, 2007 ("Whitney Dep. II", attached hereto as Exhibit A) 35:10-35:22, 55:5-55:18 (GE Reply, Ex. E, Doc. No. 48-7); R. Fletcher Dep. 51:17-52:7 (GE SJ Memo, Ex. R, Doc. No. 36-21);

(2) the sales of Pyranol to Webster by Fletcher continued for about 11 years, from 1956 through 1967, *see* EPA's De Minimis Determination, ¶¶ 14, 43, 53 (GE SJ Memo, Ex. M, Doc. No. 36-16);

(3) Webster bought "the better part of" the Pyranol Fletcher first purchased from GE, *see* Hooper Dep. I 272:22-273:1 (GE Reply, Ex. D, Doc. No. 48-6), and that what Fletcher could not use he sold to Webster; Whitney Decl. (GE Reply, Ex. E, Doc. No. 48-7) at ¶ 8; Whitney Dep. II (Exhibit A) 40:23-41:7;

(4) Fletcher's relationship with Webster was profitable enough that Fletcher took steps to ensure that Webster  did not know he obtained his supply of Pyranol from GE, and that GE  did not know he sold some of his supply to Webster, *see* EPA's De Minimis Determination, ¶ 22 (GE SJ Memo, Ex. M, Doc. No. 36-16), Deposition of Wallace Hooper, dated July 13-14, 2000 ("Hooper Dep. II") 189:8-189:12 (GE Reply, Ex. F, Doc. No. 48-8);

(5) Webster's use of Pyranol was such that it led to the filtering and blending of Pyranol by Fletcher to satisfy the customer's demand for consistent density, *see* Whitney Dep. II (Exhibit A) 42:1-15, 49:3-9, 55:12-18;

(6) Webster's use of Pyranol was such that it paid Fletcher different prices for the material dependent upon the density of the product, and Fletcher's relationship with Webster was profitable enough that Fletcher tested and (when necessary) blended Pyranol to produce a more consistent density and maximize revenue from Webster, *see* id. at 10; and

(7) Webster manufactured asphalt roof coatings, *see* Webtex Roof Coating label (USA SJ Memo, Ex. 71, Doc. No. 35-21); U.S. Patent No. 643,830 (filed Aug. 13, 1956), No. 655, 693 (filed Aug. 13, 1956)), No. 655, 958 (filed Aug. 13, 1956) (GE Reply, Ex. B, Doc. No. 48-4); CHEMICAL WEEK, Sept. 4, 1965, at 26 (reporting the sale of Webtex to Essex Chemical Corp.) (GE Reply, Ex. C, Doc. No. 48-5).

The Government, of course, will be free at trial to cross-examine GE's witnesses and attempt to impeach its evidence, and then to argue that Webster did *not* use Pyranol to manufacture roof coating products. The Government cannot, however, foreclose disadvantageous testimony (from its own expert, as well as GE's) by ignoring the evidence or by predicting, in defiance of the record, that the evidence at trial will preclude the fact-finder from making a plausible inference that Webster *did* use Pyranol for this purpose.

Indeed, the inference is so natural that Mr. Portfolio, the Government's roof coating expert would not disagree --  referring in his report to "the *use* by Fletcher's and

Webtex of scrap Pyranol," saying that "scrap Pyranol *was* a cheap extender or scrap type material for asphalt roof coating," and concluding that Fletcher and Webster "*were* the only two companies to *use* such materials *in asphalt roof coatings*."  Revised Portfolio Report (GE Reply, Ex. G, Doc. No. 48-9), p. 5.  If the Government's own expert, after reviewing the record, inferred that Webster used Pyranol to make roof coatings, then it would not be unreasonable for a fact-finder to make the same inference.[1]

## 2.    Dr. Girard's Testimony Is Also Relevant To The Issue Of Intent -- Whether Or Not GE "Arranged For Disposal" Of The Pyranol It Sold To Fletcher.

There is something else wrong with the Government's argument. The Government suggests that evidence to "establish" Webster's use of Pyranol as a roof coating ingredient is a predicate for the relevance of expert testimony about its usefulness for that purpose. But this is only half the story. The Government misses the fact that expert testimony about Pyranol's usefulness in roof coatings is also evidence of its actual use: If Webster *could* have used Pyranol for that purpose, then it is reasonable to infer

---

[1]    More than three months after it produced Mr. Portfolio's initial expert report, the Government submitted an "amended" report, which purported to "correct" the first of these statements to insert the phrase "if it was used," and the second statement to say that Pyranol "could have been used" rather than "was used" by Webster.  ((Revised) Expert Report of Donald C. Portfolio, dated September 25, 2007 ("Revised Portfolio Report"), at pp. 3-5 (GE Reply, Ex. G, Doc. No. 48-9)).  In a cover letter, a Government lawyer contended that the "correction" was warranted to erase any implication "that Mr. Portfolio has factual knowledge regarding what Webtex was doing with the scrap Pyranol it purchased from Fletchers Paint Works." (Letter from Daniel S. Smith, Trial Attorney, U.S. Department of Justice, to William Cowan (Sept. 25, 2007) (GE Reply, Ex. H, Doc. No. 48-10)).  Note that even the lawyer's explanation concedes that Webster *purchased* its supply of Pyranol from Fletcher, and that even the "corrected" report left intact Mr. Portfolio's conclusion that "Fletcher's and Webtex *were* the only two companies to *use* [Pyranol] in asphalt roof coatings."  (Revised Portfolio Report, at p. 5 (GE Reply, Ex. G, Doc. No. 48-9)).  Whether or not this Court accepts the late-filed "corrected" report, which GE has opposed and would continue to oppose, the original report is part of the record, and demonstrates emphatically the strength of the circumstantial evidence. Like everybody else involved in this case, Mr. Portfolio may "ha[ve] no personal knowledge [i.e., direct evidence] of the operations of Webtex," (Letter from Daniel S. Smith (GE Reply, Ex. H, Doc. No. 48-10)) but he is the expert engaged by the United States to address on those portions of the record relating to Webster's involvement, and the reasonable inference he drew from the circumstantial evidence is the same as Dr. Girard's: Webster *used* the Pyranol it bought from Fletcher in its asphalt roof coating products. Indeed, the inference is so natural that the Government's lawyers -- who presumably vetted the original report carefully -- saw nothing to "correct" in it for more than three months after they produced it to GE.

that Webster *did* use it for that purpose. Dr. Girard's testimony is therefore relevant, not only to demonstrate that Pyranol was a useful product, but also to elucidate another "fact in issue" -- whether GE *intended* to sell the material as a useful product, and not to arrange for its disposal. Intent is the second element of the "useful product" inquiry. See, In re Solutia; U.S. v. Petersen Sand and Gravel, 806 F.Supp. 1346, 1354-55 (N.D. Ill. 1992) (imposing liability where the parties intended a disposal and denying liability where the parties intended a sale). Dr. Girard's testimony is relevant to intent for the following reasons:

First, as noted, Dr. Girard's (and Mr. Portfolio's) testimony will show that Webster could have used Pyranol to manufacture its asphalt roof coating products; this makes it more likely that Webster did buy the material from Fletcher for that purpose.

Second, if Webster bought Pyranol from Fletcher for that purpose, then it is more likely that Fletcher bought Pyranol from GE for a related productive purpose (i.e., resale to Webster), rather than as part of an arrangement for disposal.

The inferential chain between Dr. Girard's testimony and GE's intent, in other words, is short and consists of these solid links. The Government cannot break the chain and instead tries to escape it by advocating an untenably narrow definition of "relevance," arguing that "the question of what Webster did with scrap Pyranol is not relevant to the inquiry for trial." *See* Motion In Limine (Doc. No. 57-2) at 4, n.2. According to the Government, this is because it does not appear that GE knew Webster was buying from Fletcher the same material Fletcher purchased from GE. *See* Motion In Limine (Doc. No. 57-2) at 4, n.2.

7

Once again, while the Government may claim that GE's lack of knowledge about sales to Webster affects the weight of the evidence *at* trial, the fact does not support a decision to preclude the evidence *from* trial. As GE has previously shown, although the ultimate determinant of arranger liability may be the seller's intent, the buyer's purpose in conducting the transaction is inherently probative: when the buyer intends to purchase a useful product, the seller will usually intend to sell one. Evidence about the buyer's intent has therefore served in the case law as a reliable factual marker of the seller's. *See* Doc. No. 48-1, General Electric Company's Reply To The United States' Opposition To General Electric Company's Motion for Summary Judgment at 8-10 and cases cited therein. Because it will assist the trier of fact to make this determination as well, Dr. Girard's testimony is both relevant and admissible under Rule 702.

GENERAL ELECTRIC COMPANY,

By its counsel,

*/s/ William M. Cowan*

Bret A. Cohen, BNH No. 15989
Jeffrey R. Porter, MA BBO No. 552520
Peter A. Biagetti, MA BBO No. 042310
William M. Cowan, MA BBO No. 566940
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
Dated: August 18, 2008          (617) 542-6000

8

## CERTIFICATE OF SERVICE

I, William M. Cowan, do hereby certify that on the 18th day of August 2008, I caused a true and accurate copy of Defendant General Electric Company's Memorandum in Opposition to Plaintiff's Motion to Limit the Expert Testimony of Dr. James Girard to be served as indicated below to all parties on the attached Service List.

*/s/ William M. Cowan*
William M. Cowan

## SERVICE LIST

Catherine Adams Fiske, Esq.
Environmental Enforcement
Section
United States Department of Justice
Boston Field Office
One Gateway Center, Suite 616
Newton, MA 02458

(by electronic mail at
Addie.Fiske@usdoj.gov)

Laura J. Rowley, Esq.
US Department of Justice (#7611)
Environmental Enforcement
Section
PO Box 7611
Washington, DC 20044-7611

(by electronic mail at
Laura.Rowley@usdoj.gov)

9