UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| UNITED STATES OF AMERICA,      )<br>                                                              )<br>       Plaintiff,                                 )<br>                                                              )<br>v.                                                         )<br>                                                              )<br>GENERAL ELECTRIC COMPANY,  )<br>                                                              )<br>       Defendant.                             )<br>                                                              ) | Case No.: 06-CV-00354-PB<br><br>Judge Paul J. Barbadoro |


**REPLY TO GENERAL ELECTRIC COMPANY'S MEMORANDUM IN OPPOSITION
TO THE UNITED STATES' MOTION IN LIMINE TO EXCLUDE
THE PROPOSED TESTIMONY OF GENERAL ELECTRIC COMPANY'S
EXPERT WITNESS NEIL SHIFRIN**

The United States submits this reply to General Electric Company's Opposition to the United States' Motion in Limine to Exclude the Proposed Testimony of General Electric Company's Expert Witness Neil Shifrin ("Opposition").

A. Shifrin's First Opinion on Nascent Environmental Regulation Will Not Assist the Court in Resolving a Contested Issue of Fact.

Shifrin's first opinion on nascent environmental regulation merely states the obvious -- namely, that environmental regulation has become more rigorous as environmental consciousness has evolved over time. This general point is not contested.[1/] Further, Shifrin and GE do not dispute that environmental consciousness, laws, and regulations had begun to emerge by the 1950s.

Shifrin and GE also do not dispute that laws and regulations governing discharge of

---

[1/] Moreover, the United States and GE agree that whether GE violated any laws or regulations in existence in the 1950s and 1960s is not at issue in this action. CERCLA is a strict liability retroactive statute.

industrial waste to the Hudson River existed during the relevant time period.  See Doc. No. 61 at 9-10 (Opposition).  Similarly, it is not contested that an action was brought against GE in 1975 for discharges of PCBs dating back twenty years.  See Complaint In the Matter of Alleged Violations of [New York Regulations] by General Electric Company at ¶¶ 4, 6, 14,  Exhibit 1, hereto.[2]  In addition, GE concedes that it knew at the time that PCBs required "proper handling" and that there was a "wealth of public information on the potential hazards of PCBs."  See Doc. No. 34-15 at Bates No. PAI 001105 (GE Memorandum of Points and Authorities submitted in an unrelated district court litigation).  These legal and social constraints acted as limitations on GE's disposal of PCBs into the Hudson River;  otherwise, GE would never have paid money to send scrap Pyranol to a landfill.

Shifrin, however, appears to argue that there were *no* known potential legal or social consequences for GE's disposal of PCBs to the Hudson River in the 1950s and 1960s.  See Doc. No. 59-4 at 151:11-18 (Shifrin Deposition).  That is obviously untrue.  Not only is his opinion undercut by the concessions discussed above, but it is also directly contradicted by the evidence in this case:  GE paid up to $3.00 per drum to landfill scrap Pyranol during the relevant time period.  After pages of testimony and briefing, neither Shifrin nor GE offers any explanation for why GE would ever pay for such disposal, if GE believed at the time that it could freely dispose of scrap Pyranol in the Hudson River without potential legal or social consequences.  Clearly at the time GE had some reservations, but Shifrin offers no expertise to assist this Court in

---

[2] This matter was ultimately resolved by settlement.  Contrary to GE's assertion in its Opposition at 3, the United States does not intend to argue at trial that GE violated these laws and regulations, only that discharges of its PCBs into the Hudson River exposed GE to potential liability.

understanding GE's reluctance to dispose of all its scrap PCBs in the Hudson River.[3/]

    B. Shifrin is Neither Qualified From a "Legal Standpoint" Nor a "Technical Standpoint" to Offer his Third Opinion.

GE argues in its Opposition that Shifrin's third opinion is not offered as a legal conclusion, but was derived from a "technical standpoint."  See Doc. No. 61 at 14-15 (Opposition).  Even if this were true – and notwithstanding Shifrin's admission in his deposition that he had been instructed by GE's attorneys on the legal meaning of the term "useful product" – GE fails to demonstrate how Shifrin is qualified to offer such an opinion when he is not an economist with expertise in secondary commercial markets or chemical markets.  See Doc. No. 59-2 at 2, 12-13 (United States' memorandum in support of its motion to exclude Shifrin's testimony).  Further, any conclusions about the nature of the transactions between GE and Fletcher's and the "usefulness" of scrap Pyranol derived from a purportedly "technical standpoint" would necessarily take into account an analysis of the various contaminants that distinguished scrap Pyranol from pure PCBs.  Because Shifrin has failed to address this question, or capitalize upon any specialized knowledge he may have, his third opinion is merely the same as that of a layperson and does not rise to the level of expertise that would "assist the trier of fact to understand the evidence" in this case.  See Fed. R. Evid. 702.

    C. The United States Attempted to Compromise with Proposed Stipulations.

GE's portrayal of discussions with the United States concerning possible stipulations is inaccurate by omission.  See Doc. No. 61 at 3-4 fn. 3 (Opposition).  GE's counsel initially proposed that stipulations might obviate any need for Shifrin to testify.  Towards that goal, the

---

[3/] Shifrin should not be qualified as an expert in this instance merely because other courts have accepted his testimony under different circumstances.

United States provided proposed stipulations to GE's counsel.[4]  In response, GE agreed with one of the United States' proposed stipulations, and proposed the two additional stipulations as described in GE's Opposition.  See id.  The United States then informed GE that it did not agree with GE's proposed additional stipulations (although it obviously agreed to the one that it had originally proposed).

GE's Opposition – which purports to describe the parties' negotiations on this issue – (1) presents only two of three stipulations proposed by GE, (2) omits the stipulations proposed by the United States, and (3) omits the stipulation upon which both parties informally agreed:

> Laws governing industrial discharge into the Hudson River were in effect as early as 1950.  See New York's Water Pollution Control Act of 1949, N.Y. Pub. Health L. 1949 c. 666, Article 6, Title III, § 115.  In addition, by 1965, pursuant to New York's Water Pollution Control Act, New York's Water Pollution Control Board passed regulations governing industrial discharge into the Upper Hudson River Basin.  See 6 NYCRR § 941.

---

[4] The United States' proposed stipulations were:
   (1) The United States does not claim in this proceeding that GE violated any landfill laws or regulations that may have been in place during the 1950s and 1960s;
   (2) The only known legal action undertaken to enforce laws or regulations prohibiting GE's discharge of PCBs into the Hudson River during the relevant time period (1953 - 1967) was that by the New York State Department of Environmental Conservation for GE's discharges of PCBs dating back to 1966.  See In the Matter of Alleged Violation of Sections 17-0501, 17-0511 and 11-0503 of the Environmental Conservation Law of the State of New York, Interim Opinion and Order, File No. 2833, February 9, 1976;
   (3) Laws governing industrial discharge into the Hudson River were in effect as early as 1950. See New York's Water Pollution Control Act of 1949, N.Y. Pub. Health L. 1949 c. 666, Article 6, Title III, § 115.  In addition, by 1965, pursuant to New York's Water Pollution Control Act, New York's Water Pollution Control Board passed regulations governing industrial discharge into the Upper Hudson River Basin.  See 6 NYCRR § 941;
   (4) During the 1950s and 1960s there was a wealth of public information on the potential health hazards of PCBs and the precautions necessary to avoid these hazards;
   (5) During the 1950s and 1960s, GE put warnings of the potential hazards of PCBs on its products that contained PCBs;
   (6) GE did not put warnings on the scrap Pyranol it transferred to Fletcher's.
The proposed stipulations (4), (5), and (6) were proffered by the United States so GE was aware that by agreeing to limit the scope of some trial testimony, the United States was not agreeing to eliminate presenting the facts contained in proposed stipulations (4), (5), and (6).

The United States attempted to reach agreement with GE and streamline the issues for trial. Although GE's disposal of scrap Pyranol in landfills and disposal of scrap Pyranol to the Hudson River are just two of the factors to consider in this Court's analysis of the relevant totality of circumstances, they are nonetheless important factors in determining whether GE arranged for the disposal or treatment of a hazardous substance at the Fletcher's Paint Works Superfund Site.[5/] The United States could not agree to minimize the relevance of these factors through the stipulations GE proposed, which – in addition to being inaccurate and/or unsubstantiated – suggest that its discharges of scrap Pyranol into the Hudson River during the relevant time period were lawful (an issue that has never been adjudicated to judgment), or were otherwise free of consequence.

## CONCLUSION

For the reasons stated above and in the United States' Motion in Limine to Exclude the Proposed Testimony of General Electric Company's Expert Witness Neil Shifrin, this Court should grant the United States' Motion.

---

[5/] Indeed, this Court noted that GE's disposal of scrap Pyranol into the Hudson River is an important factor to consider in this case. See Transcript of Oral Argument, April 16, 2008 at 72:3-8, Exhibit 2.

        Respectfully submitted,

        RONALD J. TENPAS
        Acting Assistant Attorney General
        Environment and Natural Resources Division
        United States Department of Justice
        Washington, D.C.  20530


        */s/ C.A. Fiske*
        Catherine Adams Fiske, Trial Attorney
        Environmental Enforcement Section
        United States Department of Justice
        One Gateway Center, Suite 616
        Newton, MA 02458
        addie.fiske@usdoj.gov
        (617) 450-0444


        Peter M. Flynn, Senior Attorney
        Laura J. Rowley, Trial Attorney
        Environmental Enforcement Section
        United States Department of Justice
        P.O. Box 7611
        Washington, D.C.  20044-7611


        THOMAS P. COLANTUONO
        United States Attorney
        District of New Hampshire

        Gretchen Leah Witt
        Chief, Civil Division
        Office of the United States Attorney
        53 Pleasant Street, Fourth Floor
        Concord, NH  03301-3904


OF COUNSEL:

RuthAnn Sherman
United States Environmental Protection Agency
Region 1
One Congress Street, Suite 1100 (SES)
Boston, MA  02114

<u>Certificate of Service</u>

       I, Catherine Adams Fiske, certify that the foregoing Reply with Exhibits was filed and served electronically through ECF on Peter Biagetti and William "Mo" Cowan, counsel to the General Electric Company, on September 2, 2008.

                                             <u>*/s/ C.A. Fiske*</u>
                                             Catherine Adams Fiske