UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-CV-00354-PB |
| | ) | |
| GENERAL ELECTRIC COMPANY, | ) | Judge Paul J. Barbadoro |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT
GENERAL ELECTRIC COMPANY'S MOTION FOR JUDGMENT**

Defendant General Electric Company asks this Court to enter judgment in its favor in the wake of the Supreme Court's recent clarification of the proof required to establish "arranger" liability. After the first-phase bench trial that ended last November 10, this Court made findings of fact which led it to conclude that GE had "arranged for disposal" of hazardous substances at the Fletcher Paint Works Site pursuant to 42 U.S.C. §9607(a). This conclusion, however, was based on the Court's understanding that the statutory requisite of an "arrangement for disposal" can be met in either of two ways: (1) it "means entered into an arrangement in which disposal was the desired outcome;" but (2) it also encompasses cases in which disposal is *not* the objective but the defendant nevertheless "knows that disposal is substantially certain to result from the arrangement." 11/10/08 Trial Tr. 137. See also 11/4/08 Trial Tr. 52 ("an arrangement for disposal is an arrangement in which disposal is either intended to follow from the act or substantially certain to result from the arrangement").

This two-pronged legal standard did not survive the Supreme Court's decision in Burlington N. & Santa Fe Ry. Co. v. United States, 129 S.Ct. 1870 (2009). In that case,

1

the Supreme Court made clear that arranger liability requires proof of an actual intention to dispose as specifically defined by the statute, and that while evidence of knowledge may be probative of intent, "knowledge alone is insufficient to prove that an entity 'planned for' the disposal" of a hazardous substance, as required by CERCLA. Id. at 1879-80. Simply put, the Supreme Court rejected the second prong of this Court's standard.

The Supreme Court's decision profoundly affects the conclusion this Court drew from its findings at trial, which correctly emphasized that there was no evidence in the record that GE "required" or "desired" that any such disposal occur. 11/10/08 Trial Tr. 150. This Court found that disposal "was *not* the objective of the arrangement" between GE and Fletcher Paint. 11/10/08 Trial Tr. 154 (emphasis added). Rather, GE was at most "indifferent to what happened to [the transferred material] after it got to the Fletcher's property." 11/10/08 Trial Tr. 150.

Still, this Court decided that GE was an "arranger" because of what it knew: "GE understood that while Mr. Fletcher hoped to make productive use of some of the Pyranol, he clearly could not make productive use of much of it." 11/10/08 Trial Tr. 154. Even though GE lacked any intent to effect disposal, the Court reasoned, GE was liable as an arranger because it "knew that . . . Fletcher could not use all of the scrap Pyranol," id. at 155, and because it "understood that this was an arrangement with Mr. Fletcher that would result in Mr. Fletcher disposing of substantial quantities of the scrap Pyranol at the site. . . ." Id. at 156. The conclusion announced by the Court on November 10 therefore confirmed what the Government itself had conceded in its closing argument: the plaintiff could establish arranger liability here merely "on constructive intent . . . and not actual

2

intent," 11/10/08 Trial Tr. 65, and such "constructive intent" comprehended only the second half of the Court's intent-or-knowledge formulation: "constructive intent is established if GE knew that disposal was a substantial certainty at the time of the transaction. . . ." 11/10/08 Trial Tr. 11.

The application of Burlington Northern to the Court's findings, therefore, requires that judgment be entered in favor of GE. Burlington Northern precludes a finding of arranger liability on the basis of what the Government calls "constructive intent." It unequivocally requires proof of actual intent to dispose. Because this Court, in its role as finder of fact, specifically found that GE did *not* intend to effect a disposal (as defined in the statute) through its dealings with Fletcher Paint Works, judgment must be entered for GE.

**1.     Arranger Liability Depends On Proof That The Defendant Actually Intended To Dispose Of Hazardous Substances.**

The legal standard employed by this Court at trial was explicitly disjunctive. It assumed that an "arrange[ment] for disposal," within the meaning of the statute, could be found when disposal "was intended to follow from the act," 11/4/08 Trial Tr. 52, but that arranger liability could also be imposed even "without an actual intent to dispose as long as the arrangement is such that under the circumstances disposal is substantially certain to result and you're aware of that at the time of the arrangement." 11/4/08 Trial Tr. 47. In the Court's opinion, it could define the statutory concept of an arranger broadly enough to "encompass both desiring a particular outcome and engaging in the arrangement with knowledge that disposal is substantially certain to result," by construing the phrase "arrange for" against the "legal backdrop" of "basic common law in the criminal area and

3

the tort area," and in particular in view of the legal principle "that a person is deemed to intend that which follows naturally from their actions." 11/4/08 Trial Tr. 52.

Thus, although the Court rejected as "untenable" the Government's position that arranger liability can be imposed on the basis of what a defendant *should* have known, id., it embraced a legal standard, derived from non-statutory concepts of tort and criminal law, under which a party (1) could be deemed to know that which it *must* have known (because the consequence was "substantially certain" to happen, or would "follow naturally" from arrangements the party had made), and (2) could be deemed to have "arranged for" that which it knew, or must have known, would happen. This formulation was consistent with the reasoning of other federal courts at the time, and, therefore, GE conceded that proof of knowledge or intent would suffice, and that proof of substantially certain disposal was "an evidentiary avenue to proof of requisite knowledge and intent to satisfy the statute." 11/4/08 Trial Tr. 66.

In Burlington Northern, however, the Supreme Court approached the scope of the arranger liability provision from a different direction, and reached a different result. According to the Court, the scope of CERCLA liability is properly defined, not by reference to extrinsic legal standards, but by observance of the text. Arranger liability "may not extend beyond the limits of the statute itself," 129 S.Ct. at 1879, that is, beyond the meaning of the phrase "arranged for disposal or treatment." Although CERCLA does not specifically define this essential phrase, the Supreme Court did not require a statutory glossary. The dictionary was enough: "[i]n common parlance, the word 'arrange' implies action *directed to a specific purpose*," id. (emphasis added), and therefore, "under the plain language of the statute, an entity may qualify as an arranger under §9607(a)(3)

4

when it takes *intentional steps to dispose of* a hazardous substance." Id. (emphasis added).

Rejecting the Government's argument that Shell had arranged for the disposal of hazardous substances by shipping a pesticide to the site owner "under conditions it knew would result in the spilling of a portion of the hazardous substance by the purchaser or a common carrier," id. at 1880, the Supreme Court said that:

> [w]hile it is true that in some instances an entity's knowledge that its product will be leaked, spilled, dumped or otherwise discarded may provide evidence of the entity's intent to dispose of its hazardous wastes, knowledge alone is insufficient to prove that an entity 'planned for' the disposal, particularly when the disposal occurs as a peripheral result of the legitimate sale of an unused, useful substance.

Id.

The Supreme Court held that the Government had to prove more than "knowledge alone" to establish arranger liability; it had to prove that Shell had entered into the sale of its pesticide "with *the intention* that at least a portion of the product be disposed of during the transfer process by one or more of the methods described in [42 U.S.C.] §6903(3)." Id. (emphasis added). Even though "spilling" is one of the methods of disposal described in Section 6903(3),[1] evidence that Shell knew spills would occur during the transfer process did "not support an inference that Shell intended such spills to occur." Id.[2]

---

[1] The methods of disposal described in Section 6903(3) are: "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." 42 U.S.C. §6903(3).

[2] Of course, in the present case this Court properly found that, unlike Shell, there was no "persuasive evidence in the record to suggest that GE knew" of such a "disposal." See 11/10/08 Trial Tr. 143, 144, 155.

5

The decision in Burlington Northern thus erased the second half of the two-pronged, intent-or-knowledge standard employed by this Court. Liability cannot be imposed on the basis of transactions "in which disposal is *either* intended to follow from the act *or* substantially certain to result from the arrangement." 11/4/08 Trial Tr. 52 (emphasis added). Intent to dispose is the *sine qua non* of an arrangement for disposal; and unless the evidence proves that the defendant took "action directed to a specific purpose," 129 S.Ct. at 1879 – that is, unless that evidence establishes that the defendant actually "planned for" disposal to occur through one of the methods enumerated in Section 6903(3), id. at 1880 – there is no arranger liability.

**2.    GE Is Entitled To Judgment Because This Court Has Already Found That GE Did Not Plan For Or Act With A Specific Purpose To Dispose Of Scrap Pyranol At The Fletcher Site.**

By narrowing the permissible scope of arranger liability to cases in which intent to dispose has been established, the Burlington Northern decision dictates that judgment should be entered in favor of GE in this case. The essential factual questions have already been answered here. GE stands in the same legal position as the defendant in Burlington Northern but in an even better factual position. Shell knew that spills and leaks were inevitable because of the corrosive nature of its product and the manner in which it was transferred and stored, 129 S.Ct. at 1876-77 and n.4, but it was not liable as an arranger because it did not plan for those releases to occur. Id. at 1880. GE likewise may have known that, because of the nature of scrap Pyranol, some of the material "would not have been usable by [Fletcher] and would have to be disposed of." 11/10/08 Trial Tr. 155.[3]

---

[3]    GE respectfully takes issue with the Court's finding to this effect, but its disagreement is not material because the outcome is the same even if the finding is conceded for purposes of argument.

6

But this Court has already found that GE's knowledge did not amount to intent: "GE did not – in entering into the arrangement [with Fletcher], desire that the barrels be disposed of. That was not the objective of the arrangement." 11/10/08 Trial Tr. 154.

Put simply, Burlington Northern precludes the imposition of arranger liability on GE because (1) Burlington Northern requires proof of actual intent, and (2) this Court has already decided that GE *lacked* such intent. The terminology used by the Supreme Court may not be precisely identical to that used by this Court in making its findings, but it is so closely synonymous as to leave no doubt about the application of Burlington Northern to these facts. The Supreme Court defined a culpable arrangement as action directed to the specific "purpose" of disposal, 129 S.Ct. at 1880; this Court found that disposal was not the "conscious object" of GE's actions. 11/10/08 Trial Tr. 150. The Supreme Court said that a CERCLA plaintiff's burden is to prove that the defendant "planned for" disposal, 129 S.Ct. at 1880; this Court found that such disposal was not GE's "objective." 11/10/08 Trial Tr. 154. The Supreme Court required proof of an "intention" to effect disposal as defined by CERCLA, 129 S.Ct. at 1880; this Court found no evidence to show that GE "desired" any disposal, as defined by CERCLA, to occur. 11/10/08 Trial Tr. 150, 154.

These findings were entirely correct when made. Only the outcome needs to change in light of the Supreme Court's ruling in Burlington Northern. While emphasizing that "mere knowledge" is not sufficient to prove that a defendant "planned for" disposal, 129 S.Ct. at 1880, the Supreme Court clarified the role that a finding of knowledge *may* play in an arranger-liability case: a defendant's "knowledge that its product will be leaked, spilled, dumped or otherwise discarded [that is, knowledge that the transferred material will be disposed of by one of the methods enumerated in Section 6903(3)] may

7

provide *evidence* of the entity's intent to dispose of its hazardous wastes. . . ." Id. (emphasis added).

Under Burlington Northern, therefore, evidence of knowledge is just that: evidence. A finding of knowledge is not a finding of liability and – depending on the circumstances – it may or may not be probative of the essential element of intent. Just as the knowledge found in Burlington Northern did not support a conclusion of intent to dispose, the knowledge found by this Court does not do so either. This Court correctly found that GE *lacked* intent to dispose because there was a complete failure of proof that GE's putative knowledge of eventual disposal rose to the level of a plan, a specific purpose, or an "intention that at least a portion of the product be disposed of . . .." 129 S.Ct. at 1879-80.

The trial evidence indicated only three conceivable pathways of PCB "disposal" at the Fletcher site: (1) Fletcher may have used some of the material as a dust suppressant, (2) Fletcher may have used some of the material as a defoliant or herbicide, and (3) Fletcher may have maintained some of the material on-site in drums that, after years or decades of exposure to the elements, eventually leaked some of their contents into the surrounding environment.[4]

About the first two methods of "disposal," this Court found – and GE agrees – that there is no "persuasive evidence in the record to suggest that GE knew that Fletcher

---

[4] There was also evidence at trial to suggest that leaks or spills occurred when Fletcher unloaded and tested the Pyranol it obtained from GE, and when Fletcher blended and filtered the material to prepare it for use or resale. These incidental (but not necessarily insubstantial) releases were not mentioned by the Court in its findings, and liability on the basis of their occurrence -- at the Fletcher site -- would obviously be foreclosed by Burlington Northern. GE knew even less about what occurred during those processes, and had less control over them, than Shell did during the transfer process with its customer.

8

was using Pyranol, himself, as a dust suppressant," 11/10/08 Trial Tr. 143, and no "persuasive evidence in the record to suggest that GE knew that Fletcher was using it as – would use it as an herbicide or insecticide. . . ." 11/10/08 Trial Tr. 144. If knowledge is sometimes probative of intent, so is lack of knowledge: intent and liability cannot be inferred from evidence that Fletcher effected a form of disposal of which GE was unaware.

As for the last possible form of "disposal" at the Fletcher site – leaks of Pyranol from weather-beaten containers – this Court seems to have concluded that GE knew something *like* it would happen, because in the Court's opinion GE knew that some Pyranol "would not have been usable by [Fletcher] and would have to be disposed of." 11/10/08 Trial Tr. 155. GE disagrees with this finding; if any disposal-by-abandonment did occur at the Fletcher site, the releases occurred years or even decades after GE last did business with Fletcher Paint. The most that can plausibly be said about GE's state of mind, therefore, is that the company *should* have known that such disposal would occur, an untenable basis for liability even before the Supreme Court decided Burlington Northern.

The validity of the Court's finding, however, is not material to the outcome of this case. The sort of knowledge attributed to GE is not, and could not be deemed, proof of an intention to dispose "by one or more of the methods described in §6903(3);" and this Court did not, and was right not to, draw such a false equivalence. Transferring hazardous material with knowledge that the transferee might *some* day discard *some* portion of it by *some* means that might coincide with one of the methods of "disposal" enumerated in Section 6903(3) is not nearly the same thing as *planning* for such disposal

9

or taking action directed to that *specific purpose*. It is, rather, precisely the sort of generalized awareness (or "mere knowledge," 129 S.Ct. at 1880) that the Supreme Court in <u>Burlington Northern</u> disallowed as a basis for arranger liability.

## **Conclusion**

Applied in light of the Supreme Court's decision in <u>Burlington Northern</u>, this Court's findings of fact preclude the imposition of arranger liability on GE. Even if GE "knew" that some disposal in some form would eventually occur (and GE continues to dispute the Court's finding to this effect), acting with such knowledge does not amount to an arrangement for disposal of hazardous substances, as the Supreme Court has now defined that term. GE did not intend for disposal to occur when it arranged for the transfer of Pyranol to Fletcher Paint, and judgment should therefore be entered in its favor.

Respectfully submitted,

GENERAL ELECTRIC COMPANY,

By its counsel,

*/s/ Peter A. Biagetti*
Bret A. Cohen, BNH No. 15989
Jeffrey R. Porter, MA BBO No. 552520
Peter A. Biagetti, MA BBO No. 042310
William M. Cowan, MA BBO No. 566940
MINTZ, LEVIN, COHN, FERRIS,
  GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
(617) 542-6000