UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW HAMPSHIRE


**United States of America**

    **v.**                                     Case No. 06-cv-354-PB
                                              Opinion No. 2010 DNH 203
**General Electric Company**


                          **MEMORANDUM AND ORDER**

    The United States has sued General Electric Company ("GE") pursuant to Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") to recover costs that the United States incurred in responding to soil and ground water contamination at the Fletcher Paint Works and Storage Facility Superfund Site in Milford, New Hampshire.

    Following a bench trial, I determined that General Electric is a responsible party under Section 107(a) because it arranged for the disposal of hazardous substances at the site.  In an effort to resolve remaining issues and facilitate an appeal, the parties entered into a stipulation identifying the response costs that the parties argue GE will be liable for in the event that my liability determination is affirmed on appeal.  The stipulation exempts $1,305,921 in costs that the United States incurred in

connection with removal actions at the site in 1993 and 1995. GE now argues in a motion for partial summary judgment that the government is barred from recovering the exempted costs by the applicable statute of limitations. The United States has filed a cross-motion for summary judgment on the same issue.

In this Memorandum and Order, I determine that the statute of limitations does not prevent the government from recovering the costs it seeks.

## I. BACKGROUND

### A. Site Activities

The United States Environmental Protection Agency ("EPA") became actively involved with the Fletcher Paint Works and Storage Facility site in 1988 when it removed hundreds of barrels of hazardous substances from the site and placed a temporary cap over contaminated soils. The site was placed on the National Priorities List of Superfund Sites less than a year later.[1]

The EPA commenced a Remedial Investigation/Feasibility Study ("RI/FS") in October 1991 and issued a public-comment draft of

---

[1] The EPA organized the site into two "operable units" for administrative purposes. This action deals only with the EPA's attempts to recover costs associated with Operable Unit 1.

the RI/FS in December 1996. It undertook several removal actions at the site while the RI/FS was underway. In 1991, it installed a perimeter fence around the property and removed large containers of hazardous substances. In 1993 it repaired the fence, demolished and removed a storage shed contaminated with polychlorinated biphenyl ("PCB"), repaired soil caps covering contaminated soil, tested materials found at the site to determine whether they contained PCB, and transported and disposed of other hazardous substances (collectively "the 1993 Removal Action"). In 1995, the EPA issued a Unilateral Administrative Order ("UAO") requiring GE to remove contaminated soil from adjacent properties, and re-pave a portion of a nearby street (collectively "the 1995 Removal Action").[2]

The EPA released a Record of Decision in September 1998 and initiated physical onsite construction for a portion of the Remedial Action on December 4, 2000. Thereafter, in July 2001, it issued a UAO requiring GE to implement the Record of Decision. Remedial action is ongoing.

---

[2] With respect to the 1995 Removal Action, the government seeks to recover costs incurred in overseeing GE's compliance with the UAO.

## B.  Litigation History

In 1991, the United States filed a complaint against GE and Windsor-Embassy Corporation pursuant to Section 107(a) of CERCLA seeking to recover costs the United States had and would incur in responding to contamination at the site.  The United States and GE entered into a consent decree in February 1994 requiring GE to reimburse the EPA for the response costs it had incurred as of April 30, 1993.  The consent decree did not include a finding of liability and the United States' request for a declaratory judgment was dismissed "without prejudice to whatever [] rights the United States has, including . . . response costs."

The United States commenced this action on September 20, 2006.

## III.  STANDARD OF REVIEW

Summary judgment shall be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).  The evidence submitted in support of the motion for summary judgment must be considered in the light most favorable to the nonmoving party, indulging all reasonable inferences in its favor.  See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001).

A party seeking summary judgment must first identify the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted."  Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996).

### III. **ANALYSIS**

The statute of limitations for CERCLA claims is governed by a somewhat complex statutory scheme.  Section 9613(g)(2) provides that:

> An <u>initial</u> <u>action</u> for recovery of the costs referred to in section 9607 of this title must be commenced -
>
> > (A) for a removal action, within 3 years after completion of the removal action. . . and
> >
> > (B) for a remedial action, within 6 years after initiation of physical on-site construction of the remedial action, except that, if the remedial action is initiated within 3 years after the completion of the removal action, costs incurred in the removal action may be recovered in the cost recovery action brought under this subparagraph.

> In any such action described in this subsection, the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages.  A <u>subsequent action or actions</u> under section 9607 of this title for further response costs. . . may be maintained at any time during the response action, but must be commenced no later than three years after the date of completion of all response action.

42 U.S.C. § 9613(g)(2) (emphasis added).

GE's statute of limitations argument turns on whether the current action is classified as an "initial action" to recover removal costs, which ordinarily must be commenced "within 3 years of the completion of the removal action,"[3] or a "subsequent action" for the recovery of such costs, which may be delayed until as late as "3 years after the date of completion of all response action."  42 U.S.C. § 9613(g)(2).  If the current action is an "initial action," GE argues that it is time barred because

---

[3]  The statute of limitations also permits removal action costs to be recovered in a cost recovery action filed more than three years after the removal action is completed if a remedial action "is initiated within 3 years after the completion of the removal action" and the cost recovery action is filed "within 6 years after initiation of physical on-site construction of the remedial action."  42 U.S.C. § 9613(g)(2)(b).  The United States argues that its action is timely under this provision even if it is an "initial action," but I need not reach its argument because I determine that the current action is a timely subsequent action.

it was filed more than three years after the 1993 and 1995 removal actions were completed.  If it is a "subsequent action," GE concedes that the government's claim is timely because all response actions at the site have not yet been completed.

The government contends that the 1991 complaint was the "initial action."  Therefore, it argues that the current action is a timely "subsequent action."  GE responds by arguing that the 1991 action cannot qualify as an "initial action" because it was resolved by a consent decree that did not include a liability determination that is comparable to "a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages."  42 U.S.C. § 9613 (g)(2).  In short, GE argues that the entry of a declaratory judgment on liability, or some equivalent court order, is a definitional requirement for an "initial action."

The only two circuit courts that have squarely addressed GE's argument have rejected it, see United States v. Findett Corp., 220 F.3d 842, 845-46 (8th Cir. 2000); United States v. Navistar Int'l Transp. Corp., 152 F.3d 702, 709-10 (7th Cir. 1998), and the reasoning that underlies both decisions is

compelling.[4]

---

[4] GE attempts to distinguish Findett on the grounds that the consent decree in this case did not resolve liability issues at all, whereas the defendant in Findett explicitly agreed to implement the remediation plan selected by the EPA. Findett, 220 F.3d at 844-45. GE also points out that the defendant in Navistar was actually not liable because the "initial action" in that case did not name the company as a defendant. Navistar, 152 F.3d at 710. GE's distinctions, however, do nothing to undermine the persuasive support the cases provide for the government's argument. The fact that the Navistar defendant was not named in the initial complaint was irrelevant to the court's determination that resolution of a case by consent decree did not prevent it from being an "initial action." Navistar, 152 f.3d at 710. Moreover, while the Findett defendant did agree to implement an existing remediation plan in that case's consent decree, there was still no liability determination, just as in this case. In fact, the Findett court stated that "the voluntary resolution of [the government's] claim without a declaration of liability renders the suit no less an initial action than one with such a declaration." Findett, 220 F.3d at 847.
   The other cases that GE cites to support its argument that the district court must affirmatively establish liability are inapposite. Each dealt with CERCLA cases where liability had already been determined, holding only that in those situations the court must issue a declaratory judgment so that liability will not be relitigated. See New York v. Green, 420 F.3d 99, 111 (2d Cir. 2005); Beazer East, Inc. v. United States Navy, 1997 WL 173225 *2 (4th Cir. 1997); United States v. USX Corp., 68 F.3d 811, 819 (3d Cir. 1995); Kelley v. E.I. Dupont de Nemours Co., 17 F.3d 836, 844 (6th Cir. 1994). This is consistent with the Findett and Navistar courts' understanding of the declaratory judgment clause. GE's cases say nothing about whether a court must make a liability determination in the first place for a case to be considered an "initial action." In fact, several of the cases were considered by the Findett court, which determined that they did not undermine the conclusion that a consent decree without a liability determination does not prevent a claim from being an "initial action." Findett, 220 F.3d at 847.

Subsection 9613(g)(2) does not expressly make the entry of a declaratory judgment a definitional characteristic of an "initial action." Instead, by establishing the limitation periods that apply to an "initial action" and specifying that a declaratory judgment of liability must be entered in "any such action," Congress suggested that a declaratory judgment on liability is something that must be entered in an "initial action" rather than something that defines such an action. Just as important, the statutory language provides no support for GE's contention that the government is barred from taking advantage of the extended limitations period that applies to "subsequent actions" simply because the court failed to enter a declaratory judgment in the "initial action."

Given the lack of clear guidance in the language of § 9613, it is appropriate to consider whether GE's argument is consistent with the purposes that CERCLA was intended to fulfill. One such purpose is to encourage settlement as a means of avoiding protracted litigation. United States v. DiBiase, 45 F.3d 541, 545 (1st Cir. 1995). Superfund sites take many years to clean up and the work is often done in phases. American Cyanamid Co., 381 F.3d 6, 16 (1st Cir. 2004). Accordingly, the government may be forced to undertake multiple removal actions while the site is

studied and a remediation plan is developed.  Although it is clearly efficient for a court to conclude an extensively litigated initial cost recovery action with a declaratory judgment on liability that can be used by the government in later actions, requiring the entry of a declaratory judgment in all such cases where the government wishes to take advantage of the extended limitation period that applies to "subsequent actions" would seriously complicate the settlement process by which most removal cost recovery actions are resolved.

As a practical matter, when removal cost recovery actions are filed early in the cleanup process, it will often be impossible for a targeted defendant to estimate its exposure in the event that it is ultimately determined to be a responsible party.  Thus, it is extremely unlikely that it will agree to participate in a consent decree and pay the cost of even a minor removal action if it is also required to agree to a declaratory judgment on liability that can be used against it in subsequent litigation.  Conversely, the government is unlikely to settle a removal cost recovery action without a liability determination if it is thereby barred from claiming the benefit of the extended limitation period that applies to "subsequent actions."  Thus, GE's proposed interpretation of § 9613 is contrary to CERCLA's

policy of encouraging prompt settlements because it creates incentives for the parties to litigate removal cost recovery claims that they would otherwise be prepared to resolve through settlement if a liability determination could be postponed until a later date.

Allowing the government to claim the benefit of the extended statute of limitations when it has resolved an "initial action" by a consent decree without a finding of liability is also consistent with one of the primary rationales that underlies statutes of limitations: ensuring that the other party is on notice of potential claims. See Tiller v. Atl. Coast Line R. Co., 323 U.S. 574, 581 (1945) (holding that "[t]here is no reason to apply a statute of limitations when. . . the respondent has had notice from the beginning that petitioner was trying to enforce a claim against it . . ."). Here, GE does not dispute that the consent decree explicitly reserved the government's right to file later claims seeking recovery of response costs, meaning GE was on notice at all times of the possibility of later cost recovery actions. In fact, the consent decree noted that "[t]he Parties expressly understand and agree that all claims for response costs [incurred after April 1993]. . . may be the subject of future enforcement actions by the United States." GE

thus cannot claim that it did not have full notice of the likelihood of later suits for subsequent costs, further undermining its argument for applying the statute of limitations.

On top of these arguments, courts have identified a general policy of favoring the government on issues involving statutes of limitations. Badaracco v. Comm'r of Internal Revenue, 464 U.S. 386 (1984) ("Statutes of limitation sought to be applied to bar rights of the Government, must receive a strict construction in favor of the Government."); see also Kelley v. E.I. DuPont de Nemours & Co., 17 F.3d 836, 843 (6th Cir. 1994) (noting that "the First Circuit has acknowledged that CERCLA's limitations periods are to be broadly construed") (citing Reardon v. United States, 947 F.2d 1509, 1519 (1st Cir. 1991). Applying this default rule to § 9613, it is clear any remaining ambiguities in the statutory language must be resolved in favor of the United States.

In light of the statutory language, as well as the underlying policies of both CERCLA in particular and statutes of limitations in general, the declaratory judgment requirement in § 9613(g)(2) is best understood as a directive to courts when an "initial action" has actually been litigated to conclusion, not as a requirement for creating initial actions in the first place. The United States' 1991 complaint was thus an "initial action,"

and the 2006 claim is a "subsequent action" as those terms are used in § 9613.  Because response actions at the Site are ongoing, the government's claim for costs stemming from the 1993 and 1995 removal activities is timely.

## IV. CONCLUSION

For the reasons stated above, I deny GE's motion for partial summary judgment (Doc. No. 150) and grant the government's cross-motion for summary judgment (Doc. No. 152).  Because the parties have stipulated as to all other remaining issues in the case, the clerk is directed to enter judgment accordingly and close the case.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

December 3, 2010

cc:   Peter A. Biagetti, Esq.
      Bret A. Cohen, Esq.
      Catherine A. Fiske, Esq.
      Peter M. Flynn, Esq.
      Donald G. Frankel, Esq.
      Bradford T. McLane, Esq.
      Jeffrey R. Porter, Esq.
      Laura J. Rowley, Esq.
      Colin G. Van Dyke, Esq.